# Hernig *v.* Johnson, Appellant.

*Promissory note—Check—Defense.*

In an action on a promissory note for $600 the defense was want of consideration. Prior to the giving of the note, a check for $600 drawn by a lumber company to the order of the defendant was indorsed by the latter and delivered to the plaintiff. In exchange, the plaintiff made and delivered his check for the same amount, payable to the order of the defendant, who deposited it in bank. This check was paid, and the proceeds credited to the defendant; but the check of the lumber company was not paid and came back to the plaintiff protested. Whereupon the plaintiff demanded payment of the defendant, and the latter gave the note in suit for the amount. These facts were not disputed; but the defendant claimed that because of a secret relation between plaintiff and a third person, the plaintiff knew that he was in

reality giving his check for such third person's sole benefit and that the proceeds of the check were paid to such third person.  The plaintiff on the other hand claimed that the transaction was just what it appeared to be on its face.  *Held,* that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 10, 1912.  Appeal, No. 256, Oct. T., 1911, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1909, No. 3,535, on verdict for plaintiff in case of Peter Hernig v. Joshua M. Johnson.  Before Rice, P. J., Henderson, Morrison, Orlady and Porter, JJ.  Affirmed.

Assumpsit upon a promissory note.  Before Barratt, J. The note was as follows:

"Philadelphia, May 1, 1909.
"$600.00.
"Two Months after date I promise to pay to the order of Peter  Hernig  ........................  Six  Hundred  ..............................  Dollars  at 1125  Locust  St.  ...................................
Without defalcation, for value received.
"No......... Due July 1.

"J. M. Johnson.
"Endorsed—Peter Hernig."

The court charged as follows:

In this case the plaintiff is suing the defendant to recover the face of a note given by the defendant to the plaintiff, under date of May 1, 1909, for $600.

The defendant resists payment of the note on the ground that he is not liable because there was no consideration or advantage of any kind that he got for this note, on the other hand, that it was given under the following circumstances.  A man by the name of Carr brought to the defendant a check of a lumber company drawn to the order of the defendant, dated March 29, 1909, for $600 asking the defendant to indorse the check, and then

the check could be taken to the plaintiff and the money gotten from him on the strength of the defendant's indorsement. The defendant did indorse the check, which was dated March 29, and the check was taken to Hernig, the plaintiff, who accepted the check and in return for it gave to the bearer his own check in the same amount to the order of Johnson, the defendant. This check the defendant deposited, and the amount of it was paid and went to his credit in the bank. Johnson, the defendant, tells you that immediately upon his receipt of Hernig's check he gave $600 in cash to Carr, and his contention is that there was some kind of secret relation between Hernig and Carr by which Hernig well understood that he was in reality giving his check to Johnson for $600 for Carr's sole benefit, and he contends that because of such a secret understanding between Hernig and Carr, Carr having received the money, he (Johnson) should not be called upon to pay this note, which a month later than the check transactions he gave to Hernig to cover $600, under the belief that he was liable to Hernig for the $600 that he had received from Hernig in exchange for the lumber company check to him, payment upon which was refused by the bank when it was deposited by Hernig.

The plaintiff, on the other hand, contends that he had no arrangement, either secret or otherwise, with Carr, by which Carr was to get this $600, in furtherance of some scheme between Hernig and Carr; that he gave his check to Johnson in exchange for the lumber company check to Johnson solely on the strength of Johnson's indorsement of it, and that as the lumber company's check was no good Johnson profited to the tune of the $600 that was realized on Hernig's check, and Hernig was out that amount, and therefore the consideration of this note was the full amount of it, which simply meant a return to Hernig of the money that he advanced to Johnson on the unpaid check of the lumber company.

The whole transaction is a peculiar one, and there are many things about it as to which you have no in-

formation. In the first place, it seems strange that Johnson should not have deposited the lumber company's check to his order in his own bank, and thus have dealt directly with the parties. On the other hand, it seems equally strange that when the lumber company check was presented to Hernig with the request that he take it and give in exchange his own check, he did not say, "Why should I do anything like that? If this check is good, instead of asking me to give my check to him for a like amount; I haven't any interest in this matter; if the check is good, it is good for Johnson as well as for me, and if it isn't good, then I don't want it. I don't propose to give out my good money in this way and take a chance on this lumber company check, when, as I have learned in previous transactions, other checks of this lumber company were no good."

Well, you have the transaction as related to you by the witnesses and it is entirely for you. The credibility of all the witnesses is for you to determine. If you believe that this remarkable deal went through with some secret understanding between Hernig and Carr that Johnson was to be made the scapegoat, and that Johnson received no consideration for this note in suit, then your verdict should be for the defendant. If, on the other hand, you believe that Johnson did receive consideration for the note, then no matter whether he gave every penny of it to some one else, he is liable to the plaintiff for the full amount, with interest, and in that event your verdict would be for the plaintiff.

The defendant has requested me to charge you upon several points.

1. No liability is imposed upon the indorser of a check by reason of such indorsement for payment of the amount of the check to the holder, even where such check is protested for nonpayment. *Answer:* Refused. [1]

2. The fact that the defendant was indorser upon a check which was protested and held by the plaintiff would not constitute a valuable consideration for a note given.

by the indorser by reason of his belief that such indorsement rendered him liable. *Answer:* Refused. [2]

3. If the check drawn by the plaintiff to the order of the defendant dated March 27, 1909, for $600 was intended to be drawn and the money paid over to Carr, then such payment would not constitute any valuable consideration for the note of $600 sued upon. *Answer:* Refused. [3]

4. If the plaintiff by concealing the facts within his knowledge affecting the honesty and integrity of Carr, wrongfully induced the defendant to give credit to Carr, then the plaintiff committed a fraud upon the defendant and cannot take advantage of his own wrong and hold the defendant liable upon the note sued upon. *Answer:* That point I affirm.

5. If the jury believe that the defendant was induced to indorse the Maryland Lumber Company check dated March 29, 1909, for $600, as the result of a conspiracy between the plaintiff and Edward B. Carr, then the plaintiff is estopped from alleging that he was induced to issue his check of $600 in exchange for said Maryland Lumber Company check, by reason of the indorsement thereof by the defendant. *Answer:* That point I affirm.

Verdict and judgment for plaintiff for $683.43. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Charles L. Smyth,* for appellant.

*J. S. Freeman,* with him *H. J. Scott,* for appellee.

OPINION BY RICE, P. J., February 27, 1913:

This was an action of assumpsit on a promissory note for $600, given by the defendant to the plaintiff. The defense was want of consideration. The immediate transaction which terminated in the giving of the note

was as follows: A check for $600, drawn by the Maryland Lumber Company to the order of the defendant, was indorsed by the latter and delivered to the plaintiff. In exchange, the plaintiff made and delivered his check for the same amount, payable to the order of the defendant, who deposited it in bank. This check was paid in due course, and the proceeds were credited to the defendant's account in bank. But the check of the Maryland Lumber Company was not paid and came back to the plaintiff protested. Thereupon the plaintiff demanded payment of the defendant, and the latter gave the note in suit for the amount. These facts are undisputed; indeed, they are practically admitted by the defendant, as the following excerpt from his testimony shows: "Q. On March 24th you got a check from Hernig for $600, which you deposited? A. Yes. Q. On March 27th you got a check from Hernig for $600, which you deposited? A. For this Maryland Lumber Company check—those checks. Q. You deposited them both? A. Yes, sir. Q. Then you had $1,200 in your bank which you got from Mr. Hernig? A. I drew out the first $600 the day it was deposited. Then it only left $600 in bank. Q. That was not Hernig's fault, was it? A. I am not blaming Hernig. Q. But you had $1,200 of Hernig's money? A. I had $600 each time. Q. That means $1,200? A. Yes. Q. And you owed Hernig then the $1,200, from March 29th until April 29th, when you gave him $600 and a note dated May 1st for $600, which is now in suit. Is that so? A. Yes, that is correct." It is thus seen that the consideration for the note in suit was not the mere discharge of the defendant's liability as indorser of the check of the lumber company, but the money he had actually received from the plaintiff on the latter's check. Hence, the defendant's first two points were irrelevant and no error was committed in declining them. The third point was also properly refused. The mere fact, standing alone, that the plaintiff knew that the defendant intended to pay the proceeds of the check to Carr, would constitute no defense to the note the defendant gave for the debt.

Upon this feature of the case the learned trial judge instructed the jury as follows: "If you believe that this remarkable deal went through with some secret understanding between Hernig and Carr that Johnson was to be made the scapegoat, and that Johnson received no consideration for this note in suit, then your verdict should be for the defendant. If, on the other hand, you believe that Johnson did receive consideration for the note, then no matter whether he gave every penny of it to some one else, he is liable to the plaintiff for the full amount, with interest, and in that event your verdict would be for the plaintiff." These instructions were preceded by a fair and adequate statement of the respective contentions of the parties, and were followed by an unqualified affirmance of the defendant's fourth and fifth points. The effect of the general charge, considered as a whole, was to submit to the determination of the jury the controlling question of fact, whether, because of a secret relation between the plaintiff and Carr, the plaintiff well understood that he was in reality giving his check to the defendant for $600, for Carr's sole benefit, as contended by the defendant, or the plaintiff had no arrangement, secret or otherwise, with Carr, by which Carr was to get the money, but, on the contrary, the transaction was just what it appeared to be on its face, as contended by the plaintiff. The general instructions, taken in connection with the affirmance of the defendant's fourth and fifth points, presented the case to the jury quite as favorably to the defendant as the evidence warranted.

The assignments of error are overruled and the judgment is affirmed.